Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission and subject to the terms of the Workers Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. Plaintiff, Joy Newsome Futrell, was an employee of defendant, K-Mart Corporation, and Cambridge Integrated Services is the workers compensation carrier of defendant-employer.
3. Plaintiff sustained an injury on 19 March 1998.
4. Plaintiff has not returned to work for defendant-employer or any other employer since 25 November 1998.
5. Plaintiff received short-term disability benefits in the total amount of $7,522.84 from 2 December 1998 until 1 June 1999 pursuant to an insurance plan funded solely by her employer.
In addition, the parties submitted a packet of medical records and reports into evidence by stipulation following the hearing before the Deputy Commissioner.
The Pre-Trial Agreement, dated 2 September 1999, that was submitted by the parties is incorporated by reference.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, a forty-eight year old female, began working for defendant in July 1980. In March 1998, plaintiff was department manager and her duties included ordering and displaying merchandise in the Roanoke Rapids store. Plaintiff also went to other stores in the northeastern part of the state when those stores were being remodeled. At the other stores, plaintiff was assigned to the hard lines department, which included automotive, sporting goods, housewares, and paint. Plaintiff also did the "lay-outs in these other stores. Plaintiffs duties involved removing existing merchandise and cleaning and restocking according to the new floor plan.
2. As of March 1998, plaintiffs average weekly wage was $659.38.
3. Plaintiff had a history of low back problems. In 1989, she injured herself at work and underwent surgery for a ruptured disc at L5-S1. The operation provided plaintiff with significant relief from her symptoms, and she was able to return to work at full duty by January 1990. Thereafter, she continued to experience some low level back pain, which did not affect her job performance. In May 1997, plaintiff saw her family doctor for a respiratory infection, but she also complained of low back pain radiating into her left hip and leg. In October 1997, she hurt her back at work and received treatment from David C. Miller, M.D., an orthopedic surgeon. Dr.Miller diagnosed her condition as an acute lumbar strain with degenerative disc disease at L5-S1. He treated her conservatively with medication, physical therapy, and exercises. Plaintiffs condition improved to its base line level, and Dr. Miller released her from his care on 15 January 1998. Plaintiff did not miss work during that period.
4. On 18 March 1998, plaintiff was at the store in Kill Devil Hills helping with the remodeling process. Plaintiff was working in the automotive department beside the motor oil display when the entire display fell over. Unable to move in time, plaintiff was knocked down, striking her head forcibly on the floor. Plaintiff was also hit by several cans of motor oil. Following the incident, a co-worker helped her to her feet. At that time, plaintiff was upset and shaking. She had pain along her left side and a twitch in her low back.
5. Plaintiff did not seek medical treatment after the accident until she returned home to Roanoke Rapids on Friday, 20 March 1998. At that time, plaintiff sought treatment with Sheryl Pearl, M.D., for complaints of soreness in her neck and pain in her left flank area. Dr. Pearl noted a history of back problems but there was no written notation of back complaints from that office visit. Dr. Pearl prescribed medication and recommended physical therapy, but plaintiff was not willing to participate in physical therapy.
6. On 23 March 1998, plaintiff returned to work as scheduled despite persistent pain in her left side and back. She continued working at the Kill Devil Hills store until June 1998. During that time, plaintiffs back pain progressively worsened and her pain began radiating down both legs. In June 1998, plaintiff was transferred to the Wilson store for another remodeling project. By August 1998, plaintiff was in considerable pain. A co-worker noticed plaintiffs pain and tried to help her as much as possible with the heavier duties.
7. On 3 September 1998, plaintiff sought treatment with Dr. Pearl. Plaintiff explained that she had had back pain since the March accident and the pain had been radiating down her legs for several months. Dr. Pearl noted that plaintiff had reported minor back pain at the previous office visit and that she had refused physical therapy treatment. Consequently, Dr. Pearl did not order physical therapy for plaintiff, but did prescribe medication. Plaintiff continued to experience significant pain but did not return for further treatment until 2 November 1998 when she saw Richard E. Frazier, M.D., in the same medical practice. Dr.Frazier restricted plaintiff to light work. On 25 November 1998, plaintiff returned to Dr.Frazier with complaints of severe pain that affected her walking. Plaintiff asked for a second opinion and was referred to Kenneth J. Rich, M.D., a neurosurgeon in Raleigh. On 10 November 1998, Dr. Rich examined plaintiff and ordered an MRI. There was no evidence of a herniated disc on the scan, and he did not recommend surgery. Dr. Rich discussed various treatment options with plaintiff without specifically recommending any of them.
8. Plaintiff was not satisfied with Dr. Richs assessment and decided to treat with Randall L. Sherman, M.D., a neurosurgeon in Elizabeth City who had treated her sister. Dr. Sherman examined plaintiff and reviewed the MRI. Dr. Sherman agreed that the MRI looked excellent, considering her previous surgery, and he saw nothing that would explain her symptoms or offer a surgical option. Dr. Sherman recommended physical therapy and epidural steroid injections and referred plaintiff back to Dr. Frazier so that she could receive the treatment locally. Physical therapy for plaintiff was then scheduled in Roanoke Rapids.
9. Since plaintiff continued to experience considerable pain, she decided to return to A. Tyson Jennette, M.D., the orthopedic surgeon who had performed her back surgery in 1989. On 12 January 1999, Dr. Jennette examined plaintiff and diagnosed her condition as a low back sprain with preexisting degenerative disc disease. Dr. Jennette injected plaintiffs sacroiliac area and prescribed a corset for her to wear. Since the MRI and a CT scan were negative, he also recommended against surgery. The injection and corset did not give plaintiff any relief. Plaintiff returned to Dr. Jennette on 2 February 1999, but did not keep her next appointment.
10. On 23 February 1999, plaintiff went back to Dr. Sherman and reported that her symptoms had gotten worse despite treatment. Dr. Sherman reviewed the CT scan and thought that it might show a recurrent disc at L5-S1. He offered to explore that level surgically. Plaintiff was anxious for some sort of relief and agreed to the operation, which was performed on 24 March 1999. No herniated disc was found during the surgery, and the operation did not improve her symptoms. On 26 April 1999, Dr. Sherman advised plaintiff that it would be unlikely that she would ever return to work.
11. The evidence was not clear regarding plaintiffs treatment from May 1999 until 13 September 1999, the date of the hearing before the Deputy Commissioner. On 18 January 2000, plaintiff saw Dr.Miller and reported her March 1998 injury, her subsequent treatment, and her persistent symptoms. Plaintiff had been using a cane to walk for approximately a year by that time because she had fallen the previous May when her left leg seemed to give way. Dr.Miller ordered a new MRI which revealed marked narrowing of L5-S1 and degenerative changes at L4-5. He diagnosed her condition as discogenic back pain with lumbar radiculopathy secondary to foraminal narrowing at L5-S1. Before performing surgery, Dr. Miller ordered a discogram to make certain that the problems at L4-5 were not contributing to her symptoms. The discogram indicated that the L4-5 disc was symptomatic as well. Dr. Miller recommended surgery to fuse both levels using BAK cages. On 13 March 2000, Dr. Miller performed the surgery, shortly before the taking of his deposition.
12. Defendant has contested this claim on the basis that there was no causal relationship between the 18 March 1998 incident and plaintiffs back symptoms for which she began treatment on 3 September 1998 because there is no report of back pain in Dr. Pearls medical notes from plaintiffs 20 March 1998 visit. However, at plaintiffs 3 September 1998 visit, Dr. Pearl noted that plaintiff reported a little back discomfort at the previous visit, which was 18 March 1998.
13. After the incident, plaintiff continued to work for defendant at store locations away from her home town. To alleviate the pain, she self-medicated with over-the-counter medication. However, plaintiff developed progressively worsening symptoms of back and leg pain until she finally sought medical treatment on 3 September 1998. Plaintiff was not involved in any accidents either at work or outside of work between March 1998 and 3 September 1998 when she sought treatment for her back pain. Plaintiff did sustain a back injury on 18 March 1998 when the motor oil display fell against her at work.
14. On 18 March 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. The fact that a shelf of motor oil containers fell on her constituted an unusual occurrence which interrupted her regular work routine. Plaintiffs back condition was a proximate result of this incident which aggravated her preexisting condition.
15. As a result of her injury by accident, plaintiff has been unable to work in any capacity from 25 November 1998 and continuing as of the date of hearing before the Deputy Commissioner.
16. Plaintiff has not reached maximum medical improvement.
17. Plaintiff received no long-term benefit from the back surgery performed by Dr. Sherman. Nevertheless, the Commission declines to rule that this surgery was an unreasonable effort to provide plaintiff some relief from pain.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 18 March 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. G.S. 97-2 (6).
2. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $439.59 per week from 25 November 1998 through 15 September 1999 and continuing until plaintiff returns to work or further order of the Commission, subject to a credit to defendant for short-term disability benefits paid to plaintiff during that period. G.S. 97-29,97-42.
3. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred, as a result of plaintiffs injury by accident, for so long as such evaluations, examinations, and treatment are reasonably required to effect a cure, give relief, and tend to lessen plaintiffs period of disability, including the back surgery performed by Dr. Sherman. G.S. 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability at the rate of $439.59 per week from 25 November 1998 through 15 September 1999 and continuing until plaintiff returns to work or until further order of the Commission, subject to a credit in favor of defendant for short-term disability benefits paid during that period. Compensation due which has accrued shall be paid in a lump sum, subject to the attorneys fee hereinafter provided in paragraph 3 this Award.
2. Defendant shall pay all medical expenses incurred or to incurred by plaintiff as a result of her compensable injury by accident of 18 March 1998, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiffs period of disability, including the back surgery performed by Dr. Sherman.
3. As of the time of the taking of the evidence, plaintiff had not reached maximum medical improvement; therefore, this Opinion and Award does not address the issue of permanent partial impairment. In the event that the parties subsequently are unable to agree on the amount of compensation for permanent partial impairment, if any, to plaintiffs back, either party may request a hearing from the Commission to resolve this issue.
4. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff is approved for plaintiffs counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check.
5. Defendant shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
RCR:db